UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT McCLINTOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:24-cv-30039-KAR |
| | ) | |
| POOMJAI POLLAWIT | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 8)

ROBERTSON, U.S.M.J.

Plaintiff Robert McClintock ("Plaintiff") brings this action under 42 U.S.C. § 1983

claiming that his constitutional rights were violated when Defendant Poomjai Pollawit

("Defendant"), a Massachusetts State Police trooper, searched the cab of his commercial truck

and discovered a loaded and improperly stored firearm. Defendant has moved to dismiss

Plaintiff's claims (Dkt. No. 8). The parties have consented to this court's jurisdiction (Dkt. No.

11). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons set forth below, Defendant's

motion to dismiss is GRANTED as to Plaintiff's Equal Protection claim and Plaintiff's Fourth

Amendment claim arising from the seizure of his person but DENIED as to Plaintiff's Fourth

Amendment claim arising from the seizure and search of the commercial truck he was operating

during the incident in issue.

## I.    Relevant Factual Allegations

On August 30, 2021, Defendant was a member of the Massachusetts State Police Truck

Team whose duties included administrative stops and inspections of commercial motor vehicles

in a tandem lot at the intersection of Interstate 291 and the Massachusetts Turnpike in Chicopee

1

(Compl. ¶¶ 5, 6).  Defendant stopped Plaintiff, who identifies as African American, as he drove

his commercial truck in the tandem area (Compl. ¶¶ 8, 9).  As Defendant approached Plaintiff's

truck, he told Plaintiff that he detected the odor of burnt marijuana emanating from the truck.  No

indicia of burnt marijuana was found on Plaintiff or in the truck (Comp. ¶ 10).  Defendant also

informed Plaintiff that he was going to conduct a Level 2 inspection of his truck, which involves

an inspection of the truck's exterior and permits alcohol and drug screening of the operator

(Compl. ¶¶ 11, 21; Dkt. No. 1-3 at 4-5).

When Defendant completed the inspection of the truck's exterior, he asked Plaintiff to

step down from the cab to review the findings of the examination (Compl. ¶ 12; Dkt. No. 1-3 at

9).  Plaintiff complied and in response to Defendant's request that Plaintiff empty his back

pocket, Plaintiff produced unopened packages of CBD gummies (Compl. ¶¶ 13, 15, 23, 25).[1]

Defendant indicated that Plaintiff's possession of the gummies was sufficient to hold Plaintiff

and search his truck (Compl. ¶ 13).  Plaintiff was detained by other troopers outside the truck

while Defendant searched the truck's interior including the sleeper area (Compl. ¶ 17).

Defendant indicated that the Level 2 inspection required him to measure Plaintiff's sleeper cot

(Compl. ¶ 19).  In the cab's sleeper area, Defendant looked in cabinets and opened and examined

the contents of a black bag behind the driver's seat where he found a loaded firearm (Compl. ¶

23).

Plaintiff was arrested and charged with possession and improper storage of a loaded

firearm (Compl. ¶ 24).  In state court, Defendant testified that Plaintiff was not driving while

impaired and that Plaintiff was not tested for use of alcohol or controlled substances (Compl. ¶

---

[1] "[T]he main active ingredient of marijuana is organic THC [tetrahydrocannabinol] . . . ."
*United States v. McMahon*, 861 F.2d 8, 11 (1st Cir. 1988).

22).  Plaintiff was acquitted of the firearms charges in the Chicopee Division of the

Massachusetts District Court Department on February 26, 2024, but was found responsible for a

Motor Carrier Safety Act violation, 700 C.M.R. § 7.10 (Compl. ¶ 24; Chicopee Dist. Ct. Dkt.

No. 2120CR001375).[2]

Relying on 42 U.S.C. § 1983, Plaintiff alleges that Defendant violated his constitutional

rights under the Fourth and Fourteenth Amendments as well as the Due Process and Equal

Protection clauses (Compl. ¶¶ 3, 18, 27, 29).

## II.    Standard of Review

To survive a motion to dismiss, a "complaint must contain enough factual material to

raise a right to relief above the speculative level … and state a facially plausible legal claim,"

*Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández*

*v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true well-pleaded facts in the

complaint and draw[ing] all reasonable inferences in the pleader's favor." *Id.* (citing *Tasker v.*

*DHL Rev. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)).  In resolving a motion to dismiss, the court

employs a two-step approach.  *See Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108

(1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations
> (which must be accepted as true) from its conclusory legal
> allegations (which need not be credited)." *A.G. ex rel. Maddox v.*
> *Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation
> marks omitted).  Second, [the court] "must determine whether the
> remaining factual content allows a reasonable inference that the
> defendant is liable for the misconduct alleged." *Id.* (internal
> quotation marks omitted).

---

[2] The court can take judicial notice of the certified state court record.  *See* Fed. R. Evid. 201; *see*
*also Britton v. Athenahealth, Inc.*, Civil Action No. 13-11826-GAO, 2014 WL 1669168, at *1
(D. Mass. Apr. 28, 2014) (citing cases).

*Medina-Velázquez*, 767 F.3d at 108.  While "a complaint need not plead facts sufficient to make out a prima facie case or allege all facts necessary to succeed at trial," *id.* (citing *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717-18 (1st Cir. 2014)), the elements of a prima facie case "form[ ] 'part of the background against which a plausibility determination should be made.'"  *Id.* (quoting *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013)).  "An analysis of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* at 109 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  That said, "the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"  *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "[A] court [may not] attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if … a recovery is very remote and unlikely.'"  *Id.* at 12-13 (quoting *Twombly*, 550 U.S. at 556).  When evaluating a motion to dismiss, "[e]xhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)."  *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (citing Fed. R. Civ. P. 10(c); *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 195 n.1 (1st Cir. 2001)).  The court may also rely on official public records, *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993), and take into account "'concessions' in [the] plaintiff's 'response to the motion to dismiss.'"  *Lyman v. Baker*, 954 F.3d 351, 360 (1st Cir. 2020) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d. 50, 55-56 (1st Cir. 2012)).

### III.    Analysis

"42 U.S.C. § 1983 … furnishes a cause of action against any person who, while acting under color of state law, transgresses someone else's constitutional rights."  *Alfano v. Lynch*, 847

F.3d 71, 74 n.1 (1st Cir. 2017) (citing *Kalina v. Fletcher*, 522 U.S. 118, 123 (1997)). To succeed

on a § 1983 claim, a plaintiff "must show: (1) that the complained-of conduct was committed

under the color of state law, and (2) that such conduct violated his constitutional or federal

statutory rights." *Miller v. Town of Wenham*, 833 F.3d 46, 51 (1st Cir. 2016) (citing *Chongris v.*

*Bd. of Appeals*, 811 F.2d 36, 40 (1st Cir. 1987)). There is no dispute that Defendant was acting

under color of state law on August 30, 2021. While the complaint is not a model of clarity, it

appears that Plaintiff asserts that he was arrested without probable cause and that his truck was

illegally searched in violation of the Fourth Amendment thereafter. He further appears to allege

that the initial stop was attributable to racial profiling in violation of the Equal Protection Clause,

the claim to which the court turns first.

A.    Equal Protection Violation

Plaintiff alleges that "[t]he visual identification of [him] as an African American before

the stop, and the subsequent arrest and search and seizure without probable cause or

administrative justification was discriminatory behavior contrary to [his] Equal Protection rights

…." (Compl. ¶ 29). "The Fourteenth Amendment's Equal Protection Clause prohibits a state

from treating similarly situated persons differently because of their classification in a particular

group." *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 105-06 (1st Cir. 2015) (citing U.S.

Const. amend. XIV, § 1; *Tapalian v. Tusino*, 377 F.3d 1, 5 (1st Cir.2004)). See also *Pimentel v.*

*City of Methuen*, 323 F. Supp. 3d 255, 269 (D. Mass. 2018) ("The Equal Protection Clause of the

Fourteenth Amendment generally provides that similarly situated persons are entitled to receive

similar treatment at the hands of government actors." (citing *City of Cleburne v. Cleburne Living*

*Ctr.*, 473 U.S. 432, 439 (1985)). "Selective enforcement of motor vehicle laws on the basis of

race is a violation of the Equal Protection Clause of the Fourteenth Amendment." *Flowers v.*

*Fiore,* 359 F.3d 24, 34-35 (1st Cir. 2004) (citing *Whren v. United States,* 517 U.S. 806, 813 (1996); *Chavez v. Ill. State Police,* 251 F.3d 612, 635 (7th Cir. 2001)). "Generally, for an equal protection claim to survive a motion to dismiss, a plaintiff must allege facts plausibly demonstrating that '""compared with others similarly situated, [the plaintiff was] selectively treated ... based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.""'" *Mulero-Carrillo*, 790 F.3d at 106 (quoting *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir.2001)). Individuals are similarly situated when "a prudent person, looking objectively at the incident, would think them roughly equivalent …." *Id.*

Here, Plaintiff identifies as an African American person and, thus, is a member of a protected class. However, the entirety of Plaintiff's equal protection claim is premised on the allegation that the "visual identification of [him] as an African American before the stop … was discriminatory" (Dkt, No. 1 at 4). In other words, he has alleged nothing more than that he is African American and Defendant knew it. These allegations fail to state a plausible equal protection claim. "In his pleading, Plaintiff does not 'compare the treatment [he] received at the hands of the defendant[ ] with the treatment of any person similarly situated to [him]." *Kendall v. City of Boston*, Civil Action No. 21-cv-10711- ADB. 2022 WL 598615, at *5 (D. Mass. Feb. 28, 2022) (first and third alterations in original) (citing *Estate of Bennett v. Wainwright*, 548 F.3d 155, 167 (1st Cir. 2008)). While Plaintiff's complaint suggests that he was stopped because he is African American, Plaintiff "has not alleged any specific facts to indicate that others who were similarly situated apart from their race were treated differently." *Id.* (dismissing the plaintiff's equal protection claim). He has not alleged, for example, that there is any statistical or other evidence that might show that Defendant has a history of selective enforcement based on race,

6

nor has he alleged that Defendant's communications with him evidenced discriminatory intent, or that Defendant otherwise had a history of unlawful discriminatory conduct.  *See Gillespie v. Pa. State Police*, 574 F. Supp. 3d 272, 287 (E.D. Pa. 2021) ("A plaintiff must allege specific facts, circumstances, or occurrences showing he or she was similarly situated to another specified person or entity and illustrate the alleged differential treatment that occurred." (citing *Richardson v. Didok*, CIVIL ACTION NO. 19-5072, 2020 WL 5602526, at *2-3 (E.D. Pa. Sept. 17, 2020))); *see also, e.g., Walston v. City of N.Y.*, 22-CV-10002 (LAK)(JW), 2024 WL 1376905, at *10 (S.D.N.Y. Mar. 7, 2024) ("a plaintiff alleging an equal protection violation on the basis of race must allege 'meaningful specifics' in the complaint and cannot rest on 'bare allegations which do not present circumstances that give rise to an inference of unlawful discrimination'" (quoting *Benjamin v. Town of Islip*, No. 20 CV 56 (ENV)(LB), 2021 WL 8344132, at *7 (E.D.N.Y. Aug. 12, 2021), *recommendation adopted*, 2022 WL 1090608 (E.D.N.Y. Apr. 12, 2022)), *recommendation adopted*, 2024 WL 1374837 (Apr. 1, 2024).

As another session of this court stated, to conclude that Plaintiff's allegation, based solely on Plaintiff's "own say-so," is sufficient to state a viable claim of racial profiling "would be to allow civil rights plaintiffs to bring an officer into the ambit of liability every time an officer stopped a person of color …."  *Spencer v City of Boston*, No. 15-cv-10634, 2018 WL 1417696, at *3 (D. Mass. Mar. 2, 2018), *recommendation adopted*, 2018 WL 1409794 (D. Mass. Mar. 21, 2018)*.  See also United States v. Coleman,* 483 F. App'x 419, 420-21 (10th Cir. 2012) (unpublished) (Gorsuch, J.) (affirming denial of plaintiff's motion to suppress based on an alleged violation of the Equal Protection Clause where he failed to present evidence that the police officer's decision to submit his truck to a Level 2 inspection was racially motivated).

Accordingly, the complaint fails to state a viable equal protection claim and Defendant's motion to dismiss so much of the complaint as asserts such a claim is granted.

B.      Alleged Fourth Amendment Violations

Plaintiff alleges that "[t]he illegal restraint and subsequent illegal arrest of [Plaintiff] by troopers outside while his truck was being unlawfully searched and seized by the [D]efendant inside were an unconstitutional violation of the 4th and 14th amendments" (Compl. ¶ 27).  For his part, Defendant maintains that there were no constitutional violations, and, even if there were, he is entitled to qualified immunity.

1.      *Qualified Immunity Framework*

Because Defendant has raised a qualified immunity defense, Plaintiff bears the "burden of showing that qualified immunity does not apply." *Sargent v. Town of Hudson*, Civil No. 14-cv-509-AJ, 2017 WL 4355972, at *6 (D.N.H. Sept. 27, 2017) (citing *Mitchell v. Miller*, 790 F.3d 73, 77 (1st Cir. 2015)).  The burden is a "heavy" one.  *Mitchell*, 790 F.3d at 77.  "Qualified immunity protects government officials, … from liability when they act under color of state law, *Gray v. Cummings*, 917 F.3d 1, 9 (1st Cir. 2019), and when their actions or decisions, 'although injurious, "do[ ] not violate clearly established statutory or constitutional rights of which a reasonable person would have known."'" *Swartz v. Sylvester*, 53 F.4th 693, 698 (1st Cir. 2022) (quoting *Conlogue v. Hamilton*, 906 F.3d 150, 154 (1st Cir. 2018) (alteration in original)).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).

"Under the familiar two-prong framework, courts ask (1) whether the defendant violated the plaintiff's constitutional rights and (2) whether the right at issue was 'clearly established' at

the time of the alleged violation." *Est. of Rahim by Rahim v. Doe*, 51 F.4th 402, 410 (1st Cir.

2022) (quoting *Conlogue*, 906 F.3d at 155).  The second prong has its own two elements: "the

first '"focuses on the clarity of the law at the time of the violation"' while the second '"focuses

more concretely on the facts of the particular case and whether a reasonable defendant would

have understood that his conduct violated the plaintiff's constitutional rights."''" *Bixby v. Town

of Rehoboth*, Civil Action No. 23-10334-MPK, 2024 WL 4979147, at *7 (D. Mass. Dec. 4,

2024) (quoting *Penate v. Hanchett,* 944 F.3d 358, 365 (1st Cir. 2019)).  "A right is clearly

established 'if it was "sufficiently clear that every reasonable official would [have understood]

that what he is doing violates that right."''" *Id.* (alteration in original) (quoting *Berge v. Sch.

Comm. of Gloucester*, 107 F.4th 33, 39 (1st Cir. 2024)).

    "Though [courts] refer to them as the first and second prong, the two prongs need not be

addressed in that order." *Swartz,* 53 F.4th at 698 (citing *Conlogue*, 906 F.3d at 155).  Indeed,

"undertaking the first inquiry 'sometimes results in a substantial expenditure of scarce judicial

resources on difficult questions that have no effect on the outcome of the case.'" *Haley v. City of

Boston*, 657 F.3d 39, 47 (1st Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 237

(2009)).  "A qualified immunity claim "can be raised and evaluated on a motion to dismiss, "

*Haley*, 657 F.3d at 47, when it is clear on the face of the complaint, accepting all of the

plaintiff's well-pleaded factual allegations, that either the right allegedly violated was not clearly

established or the defendant's alleged actions were objectively reasonable under the

circumstances." *Jakuttis v. Town of Dracut*, 656 F. Supp. 3d 302, 319 (D. Mass. 2023) (citing

*Haley*, 657 F.3d at 47).

2.    *Alleged Arrest Without Probable Cause*

"The Fourth Amendment protects an individual's right to be free from unreasonable seizure." *French v. Merrill*, 15 F.4th 116, 123-24 (1st Cir. 2021) (citing U.S. Const. amend. IV). See also *Mapp v. Ohio*, 367 U.S. 43, 655 (1961) ("[T]he Fourth Amendment's right of privacy … [is] enforceable against the State through the Due Process Clause of the Fourteenth …."). An arrest without a warrant is reasonable "where there is probable cause to believe that a criminal offense has been or is being committed." *Id*. at 124 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "Probable cause exists where 'at the moment of the arrest, the facts and circumstances within the [officers'] knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense.'" *Id*. (quoting *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 254 (1st Cir. 1996)). "Probable cause requires more than suspicion, but much less than the evidence necessary for a conviction." *Tomczak v. Town of Barnstable*, 901 F. Supp. 397, 401-02 (D. Mass. 1995) (citing *Henry v. United States,* 361 U.S. 98, 102 (1959)). "'In dealing with probable cause ... as the very name implies, we deal with probabilities ... on which reasonable and prudent men, who are not legal technicians, act.'" *Id*. at 402 (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949)). Moreover, "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *D.C. v. Wesby*, 583 U.S. 48, 61 (2018). The existence of probable cause requires examination of the "totality of the circumstances." *United States v. Rivera*, 825 F.3d 59, 63 (1st Cir. 2016)).

Here, Plaintiff alleges that Defendant, after completing his inspection of the exterior of the truck, asked Plaintiff to step outside the cab and empty his back pocket, at which point

Plaintiff produced two unopened packages of marijuana edibles.[3]  As a result, Defendant cited

Plaintiff for possessing marijuana pursuant to a federal regulation that prohibits a commercial

truck driver, while on duty, from "possess[ing], be[ing] under the influence of, or us[ing] . . . any

21 C.F.R. 1308.11 Schedule [1] substance . . . ."  49 C.F.R. § 392.4(a)(1).  Marijuana,

tetrahydrocannabinol ("THC," i.e., the substance that gives marijuana its psychoactive

properties), and synthetic THC are Schedule 1 controlled substances under the Controlled

Substances Act ("CSA").  *See* 21 U.S.C. § 812, Schedule 1(c)(10); 21 C.F.R. § 1308.11(a),

(d)(23), (31).  The Massachusetts Department of Transportation's Motor Carrier Safety Act has

adopted by reference those federal regulations, including 49 C.F.R. § 392.4(a)(1), and requires

all drivers to comply with the requirements of these provisions.  *See* 700 Mass. Code Regs. §

7.10.

Nevertheless, Plaintiff argues that his arrest was without probable cause because the

Agricultural Improvement Act of 2018 altered the definition of the term marijuana under the

CSA to exclude hemp grown pursuant to the 2018 Farm Bill Act so long as its concentration of

Delta-9 THC is less than or equal to 0.3% of the product's dry weight.  21 U.S.C. § 802(16)(B);

7 U.S.C. § 1639o(1).  *See also Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 124

(W.D.N.Y. 2019), *modified on reconsideration*, No. 15-CV-701-FPG, 2019 WL 11287650

(W.D.N.Y. Nov. 22, 2019) ("[T]he CSA now excludes from the definition of marijuana *any* part,

derivative, or extract of the *Cannabis sativa* plant if its THC concentration falls below that

threshold level.").  Plaintiff has not claimed that the gummies he possessed contained

---

[3] Plaintiff has not contended that the alleged request to empty his pockets was an illegal search, perhaps because a Level 2 inspection includes checking for alcohol and drugs.  In any event, the unraised issue is waived.  *See, e.g., Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 177 (D. Mass. 2013) (citing *Rodriguez v. Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011)); *see also Thompson v. MaineHealth*, 656 F. Supp. 3d 251, 258 (D. Me. 2023).

concentrations of Delta-9 THC ≤0.3% of the product's dry weight.  He only contends that

Defendant was not a certified Drug Recognition Expert, that no tests were every performed on

the gummies, and that the gummies were never introduced into evidence or produced for

inspection (Compl. ¶¶ 14, 25-26).  Plaintiff argues that these circumstances make it feasible that

the gummies were not a Schedule I substance and that he was, therefore, arrested without

probable cause (Dkt. No. 12 at 3-4).  Plaintiff has not responded to Defendant's qualified

immunity defense.

In the interests of judicial economy, the court proceeds directly to the second prong of the

qualified immunity analysis.  In disregarding Defendant's qualified immunity argument, Plaintiff

fails to meet his heavy burden of demonstrating that the Fourth Amendment right he advances,

i.e., the right not to be arrested for unlawful possession of CBD gummies absent testing proving

that they had a concentration of Delta-9 THC greater than 0.3% of the product's dry weight, was

"clearly established" at the time of his arrest.  Plaintiff neither identifies "controlling authority"

nor a "consensus of cases of persuasive authority" – and the court has found neither – sufficient

to send a "clear signal" to Defendant that arresting Plaintiff for possessing marijuana in violation

of the Federal and Massachusetts commercial vehicle regulations was unlawful based on the

sheer possibility that the CBD gummies could contain a concentration of Delta-9 THC less than

or equal to 0.3% their dry weight.  *Alfano*, 847 F.3d at 75.

Plaintiff also fails to show that "an objectively reasonable official in the defendant's

position would have known that his conduct violated that rule of law." *Id.* (quoting *Alfano,* 847

F.3d at 75).  To the contrary, an objectively reasonable police officer in Defendant's position

would have believed that he had the authority to arrest Plaintiff for a probable violation of the

federal and Massachusetts regulations at issue to enforce the law and protect the public from a

commercial truck driver who might become impaired by a controlled substance that was in his possession while driving. *See* 49 C.F.R. § 392.4(a)(1); 700 Code Mass. Regs. § 7.10. *See Lunn v. Commonwealth*, 78 N.E.3d 1143, 1154 (Mass. 2017) ("Under the common law of Massachusetts, … an officer has authority to arrest without a warrant any person who commits a misdemeanor, provided the misdemeanor involves an actual or imminent breach of the peace, is committed in the officer's presence, and is ongoing at the time of the arrest or only interrupted by the arrest. … 'Breach of the peace' in this context generally means an act that causes a public disturbance or endangers public safety in some way."); Mass. Gen. Laws ch. 274, § 1 (a misdemeanor is a crime that is not punishable by imprisonment in a state prison); *see also Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). A reasonable official in Defendant's position would not have known that he might violate Plaintiff's constitutional right by arresting him before determining the percentage of Delta-9 THC in the CBD gummies, something that he likely could not have done without laboratory testing.[4] Thus, the court is unable to conclude that every reasonable law enforcement officer in Defendant's position would have understood that what he was doing violated Plaintiff's rights. *Bixby*, 2024 WL 4979147, at *7. Defendant is entitled on qualified immunity grounds to dismissal of Plaintiff's claim that his warrantless arrest violated his Fourth Amendment rights.

---

[4] CBD can be extracted from both the marijuana variety of *Cannabis sativa* plant, with typically higher THC concentrations, or the hemp variety, with typically lower THC concentrations. *Horn*, 383 F. Supp. 3d at 120 (citing Shelly B. DeAdder, *The Legal Status of Cannabidiol Oil and the Need for Congressional Action*, 9 BIOPLR 68, 72 & n.34 (2015)).

### 3.   *Alleged Unreasonable Search of the Truck*

As a general rule, warrantless searches are "*per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). Plaintiff does not challenge the reasonableness of the Level II inspection per se, although he does dispute its proper scope. In any event, such a challenge would fail because "interstate commercial trucking is a pervasively regulated industry capable of supporting recourse to the administrative search exception [to the warrant requirement]." *United States v. Maldonado*, 356 F.3d 130, 135 (1st Cir. 2004). As such, "an administrative search of a commercial truck is constitutionally permissible." *Id. See also Owner-Operator Indep. Drivers Ass'n, Inc. v. United States Dep't of Transp.*, 840 F.3d 879, 893 (7th Cir. 2016) ("In [pervasively regulated] industries, reasonable expectations of privacy are diminished because an individual who 'embarks upon such a business … has voluntarily chosen to subject himself to a full arsenal of governmental regulation.'" (quoting *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 313 (1978))). Plaintiff acknowledges that he was driving a commercial truck and so the stop and initial warrantless Level II inspection of Plaintiff's truck was an administrative search that is excepted from the warrant requirement.[5] *See Maldonado*, 356 F.3d at 136.

---

[5]"The inspection criteria are developed by [Federal Motor Carrier Safety Administration of the United States Department of Transportation] in conjunction with the Commercial Vehicle Safety Alliance (CVSA), which is an association of States, Canadian Provinces, and Mexico whose members agree to adopt these standards for inspecting [commercial motor vehicles] in their jurisdiction." 49 C.F.R. § 350.105. The CVSA describes a Level II inspection:

> An examination that includes each of the items specified under the North American Standard Level II Walk-Around Driver/Vehicle Inspection Procedure. As a minimum, Level II Inspections must include examination of: driver's license; Medical Examiner's

Plaintiff nevertheless argues that a police officer conducting a Level II inspection is not

permitted to enter the cab of the truck to inspect the sleeping berth and it is therefore feasible

Defendant was making up the claim that he was authorized to inspect the sleeping berth to justify

his illegal search of the cab.  Plaintiff is wrong.  A Level II inspection includes inspecting the

sleeper area to ensure that it complies with 49 C.F.R. § 393.76, which includes minimum

dimensions for a sleeper berth.  *See United States v. Mendoza-Gonzalez*, 363 F.3d 788, 792 (8th

Cir. 2004) (holding the defendant's Fourth Amendment rights were not violated when a law

enforcement officer searched the compartments under his sleeper mattress because 49 C.F.R. §

393.76 requires that the sleeper area contain occupant restraints and the district court found

credible the officer's testimony that he was unable to see the required safety belts, which, in his

experience, sometimes fall into the storage compartments beneath the mattress, and he opened

---

> Certificate and Skill Performance Evaluation (SPE) Certificate (if
> applicable); alcohol and drugs; driver's record of duty status as
> required; hours of service; seat belt; vehicle inspection report(s) (if
> applicable); brake systems; cargo securement; coupling devices;
> driveline/driveshaft; exhaust systems; frames; fuel systems;
> lighting devices (headlamps, tail lamps, stop lamps, turn signals
> and lamps/flags on projecting loads); steering mechanisms;
> suspensions; tires; van and open-top trailer bodies; wheels, rims
> and hubs; windshield wipers; buses, motorcoaches, passenger vans
> or other passenger-carrying vehicles – emergency exits, electrical
> cables and systems in engine and battery compartments, seating,
> and HM/DG requirements, as applicable. HM/DG required
> inspection items will only be inspected by certified HM/DG and
> cargo tank inspectors, as applicable. It is contemplated that the
> walk-around driver/vehicle inspection will include only those
> items that can be inspected without physically getting under the
> vehicle.

*United States v. Nguyen*, 59 F.4th 958, 962 (8th Cir.), *cert. denied sub nom. Le v. United States*,
144 S. Ct. 103 (2023) (quoting Commercial Vehicle Safety Alliance, All Inspection Levels,
Level II Walk–Around Driver/Vehicle Inspection (available at
https://www.cvsa.org/inspections/all-inspection-levels/)).

the compartment to look for the restraints as part of his standard Level II inspection).  Thus, the

court rejects the inference Plaintiff advances that Defendant invented his obligation to inspect the

sleeper berth as a pretext for an illegal search of the cab of the truck.

Moving on from this preliminary issue, Plaintiff's claim regarding the scope of the search

of the truck is premised on Defendant examining inside the cabinets and the black bag in the

sleeper area where the firearm was located, which Defendant contends was unconstitutional.

Defendant's searches of these internal compartments and Plaintiff's personal bag appear to

exceed the scope of a Level II inspection, and, thus, would have to pass constitutional muster

based on some other exception to the warrant requirement.  *See Maldonado*, 356 F.3d at 135

(describing limitations on the scope of warrantless inspections of commercial establishments,

including commercial trucks).  Based on Plaintiff's allegations, by the time Defendant searched

the inside of the cab, he had cited Plaintiff for violating the regulation that prohibits a

commercial vehicle driver from possessing marijuana while on duty and declared Plaintiff to be

"out of service," meaning that Plaintiff was prohibited from operating a motor vehicle for

twenty-four hours (Dkt. No. 1-3 at 9).  *See* 49 C.F.R. §§ 27, 392.4(a)(1).  Given these

allegations, it is possible or even likely that Defendant was authorized to impound the truck and

conduct an inventory search of it pursuant to the community-caretaking exception to the warrant

requirement, but a final determination on the constitutionality of these actions is not possible on

a motion to dismiss.

The community-caretaking exception to the warrant requirement is based on the fact "that

the police perform a multitude of community functions apart from investigating crime."  *United

States v. Coccia,* 446 F.3d 233, 238 (1st Cir. 2006).  *See also United States v. Sylvester*, 993 F.3d

16, 22 (1st Cir. 2021) ("The community caretaking function 'is one of the various exceptions to

the Fourth Amendment's requirement that law enforcement officers have probable cause and

obtain a warrant before effecting a search or seizing property.'" (quoting *United States v. Rivera*,

988 F.3d 579, 581 (1st Cir. 2021)).  Thus, for example, "law enforcement officers, in 'their role

as "community caretakers,"' may 'remove vehicles that impede traffic or threaten public safety

and convenience' without obtaining a warrant." *Rivera,* 988 F.3d at 581 (quoting *Boudreau v.

Lussier*, 901 F.3d 65, 72 (1st Cir. 2018)).  The applicability of the community-caretaking

exception as applied to the impoundment and inventory of a vehicle turns primarily on whether

the officer had a "solid, noninvestigatory" reason for acting.  *United States v. Del Rosario*, 968

F.3d 123 (1st Cir. 2020) (quoting *United States v. Rodriguez-Morales*, 929 F.2d 780, 787 (1st

Cir. 1981)).  "The impound decision must be justified by a legitimate, non-investigatory purpose

and cannot be 'a mere subterfuge for investigation, [but] the coexistence of investigatory and

caretaking motives will not invalidate the seizure.'" *Sylvester*, 993 F.3d at 23 (quoting *Coccia*,

446 F.3d at 241).

"[A]n impound decision is constitutionally valid so long as it is reasonable under the

totality of the circumstances." *Sylvester*, 993 F.3d at 23 (citing *Coccia,* 446 F.3d at 238-39;

*Rodriguez-Morales*, 929 F.2d at 785-86).  The First Circuit has held that "the presence of a

department protocol spelling out when there existed noninvestigatory reasons to impound a

vehicle would be a significant factor cutting in favor of blessing a seizure done pursuant to such

an objective protocol." *Del Rosario*, 968 F.3d at 126-27 (citing *Coccia*, 446 F.3d at 238).  Even

when there is no protocol, however, other factors may still justify application of the exception,

such as the vehicle being on third party property, the driver being indisposed and no one else

being immediately available to move the vehicle, or the vehicle being parked dangerously and in

such a way that it should not be left behind.  *See id*. at 127 (citations omitted).

17

"Following a vehicle's impoundment, the Fourth Amendment allows officers to perform an 'inventory search' to catalog the vehicle's contents without a warrant." *United States v. Vick*, 742 F. Supp. 3d 79, 105 (D. Mass. 2024) (citing *United States v. Davis*, 909 F.3d 9, 17 (1st Cir. 2018)). "The purpose of an inventory search is to protect 'the property of the owner . . . , the police from claims resulting from lost or stolen property, and the police and the public from dangerous instrumentalities stored inside.'" *United States v. Hardy*, 395 F. Supp. 3d 191, 193-94 (D. Mass. 2019) (quoting *Colorado v. Bertine,* 479 U.S. 367, 373 (1987)). "The Fourth Amendment permits a warrantless inventory search if the search is carried out pursuant to a standardized policy," and "on the basis of something other than suspicion of evidence of criminal activity." *Sylvester*, 993 F.3d at 25 (citations omitted). An inventory search may include opening closed containers and compartments if permitted by the relevant policy. *See Bertine,* 479 U.S. at 376 (Blackmun, J., concurring); *Hardy,* 395 F. Supp. 3d at 193.

Here, the impoundment and subsequent inventory of the truck may have been reasonable because Plaintiff was not permitted to drive the tractor trailer truck for twenty-four hours, and the vehicle was located at the intersection of two interstate highways (Compl. ¶¶ 5, 6; Dkt. No. 1-3 at 7, 9). *See Sylvester,* 993 F.3d at 23-24 (holding that the officers had a legitimate community caretaking reason for removing a car that was stopped on the shoulder of a very busy highway without an available driver); *Coccia,* 446 F.3d at 240 ("Caselaw supports the view that where a driver is arrested and there is no one *immediately* on hand to take possession, the officials have a legitimate non-investigatory reason f[or] impounding the car."); *United States v. Ramos-Morales*, 981 F.2d 625, 626 (1st Cir. 1992) ("[I]mpoundment to protect a car from theft or vandalism [is] reasonable, and hence lawful."). However, the reasonableness of these actions cannot be determined as a matter of law on this record. For example, whether the Massachusetts

18

State Police had a policy or policies for impounding and inventorying vehicles and whether

Defendant followed those policies is not established by the allegations of the complaint or any of

the attachments.  Nor is the court otherwise able to determine the reasonableness of Defendant's

warrantless seizure of the truck and search of the compartments and black bag inside the cab.

Plaintiff lost a motion to suppress in the Massachusetts state court and this court is skeptical that

he will ultimately be able to prevail on his claim of a Fourth Amendment violation on a more

developed record.  Nonetheless, at this stage, Plaintiff has adequately stated a Fourth

Amendment claim with respect to the impoundment and inventory search of the truck.  For this

reason, this aspect of Defendant's motion to dismiss is denied.[6]

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. No. 8) is GRANTED as

to Plaintiff's Equal Protection claim and Plaintiff's Fourth Amendment claim arising from the

seizure of his person but DENIED as to Plaintiff's Fourth Amendment claim arising from the

seizure and search of the commercial truck he was operating during the incident in issue.

It is so ordered.

Dated: March 27, 2025                                    Katherine A. Robertson
                                                         KATHERINE A. ROBERTSON
                                                         U.S. MAGISTRATE JUDGE

---

[6] It is also not apparent on this record that qualified immunity would apply to shield Defendant.
The law on impoundment and subsequent inventory searches appears well-settled and would be
known to a reasonable officer in Defendant's position.